(173 App. Div. 15)

## In re NEWTON AVE. IN CITY OF NEW YORK.

### In re HARRIS et al.

(Supreme Court, Appellate Division, First Department.   June 2, 1916.)

1. MUNICIPAL CORPORATIONS ⊜⟶657(7)—STREETS—VACATION.
    The time of closing a street does not depend on the opening of a new substitutional street; but where a street is omitted from a map filed pursuant to Laws 1895, c. 1006, it is legally discontinued and closed at the time of filing the map, if an existing street is left open bounding on the block, and, if not, then when a new street is actually opened bounding on the block.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 722, 1429; Dec. Dig. ⊜⟶657(7).]

2. EMINENT DOMAIN ⊜⟶124—COMPENSATION FOR EASEMENT IN A VACATED STREET.
    Where a street is closed by filing a map as provided by Laws 1895, c. 1006, the easements therein are thereupon extinguished, and compensation is to be made as of that date if an open street remains bounding on the block; otherwise, the easements are extinguished when a public street bounding on a block is actually opened for use, and compensation is to be made as of the date of such actual opening.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 332–344; Dec. Dig. ⊜⟶124.]

3. EMINENT DOMAIN ⊜⟶75—LEGISLATIVE AUTHORITY—APPROPRIATION PRIOR TO COMPENSATION.
    The Legislature may appropriate, or authorize the appropriation by a municipality or other political division of the state, of private property for public purposes before compensation is made therefor.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 198, 199; Dec. Dig. ⊜⟶75.]

4. EMINENT DOMAIN ⊜⟶75—NECESSITY OF COMPENSATION FOR EASEMENT IN DISCONTINUED STREETS.
    Under Laws 1895, c. 1006, providing for discontinuance of public streets, condemnation proceedings or compensation for easements extinguished in such streets is not a necessary prerequisite to the extinguishment of the easements.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 198–199; Dec. Dig. ⊜⟶75.]

5. EMINENT DOMAIN ⊜⟶269—CONDEMNATION PROCEEDINGS—COMPENSATION FOR EASEMENTS IN DISCONTINUED STREETS.
    Under Laws 1895, c. 1006, § 4, the city may be compelled to institute condemnation proceedings to determine compensation for easements extinguished by discontinuing streets, or application may be made to have

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

commissioners in a proceeding pending for the opening of a contiguous street award compensation for such easements.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 698, 699; Dec. Dig. ☞269.]

**6. EMINENT DOMAIN ☞63—COMPENSATION FOR EASEMENTS EXTINGUISHED—PERSONAL CLAIM.**

Compensation for the extinguishment of an easement by discontinuance of a street under Laws 1895, c. 1006, is a personal claim accruing to the owner of the abutting property by the legal closing of the street, without regard to the actual closing thereof, or whether the actual use of the street by property owners was thereafter permitted, or whether such owner continued to hold title to the land.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 161–164; Dec. Dig. ☞63.]

**7. EMINENT DOMAIN ☞153—COMPENSATION FOR EASEMENTS EXTINGUISHED—PERSONAL CLAIM.**

A claim for compensation for an easement extinguished by discontinuance of a street, under Laws 1895, c. 1006, does not pass with a conveyance of the realty without express assignment, even though such claim was owned by the grantor.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 407–416; Dec. Dig. ☞153.]

**8. EMINENT DOMAIN ☞153—AWARD OF COMPENSATION—PERSONS ENTITLED TO—EVIDENCE.**

Evidence examined, and *held* insufficient to show petitioners, who were not the owners of land at the time the adjoining street was discontinued under Laws 1895, c. 1006, entitled to the award of compensation for extinguishment of the easements in such street.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 407–416; Dec. Dig. ☞153.]

Page, J., dissenting.

Appeal from Special Term, New York County.

In the matter of Newton Avenue in the City of New York. Petitions by Uriah Harris and others relating to the discontinuance and closing of portions of the Albany Post Road. From nine orders, each denying a motion made pursuant to the provisions of section 14 of chapter 1006 of the Laws of 1895, for an order directing the commissioners of estimate in this proceeding to ascertain and report the compensation which should be made for the extinguishment of their public and private easements in Albany Post Road, petitioners separately appeal. Affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, DOWLING, PAGE, and DAVIS, JJ.

Philip B. La Roche, Jr., of New York City, for appellants.

Joel J. Squier, of New York City (John J. Kearney, of New York City, on the brief), for respondent city of New York.

LAUGHLIN, J.    The separate petitions of the appellants were heard together by consent, and all of the appeals are contained in a single record. The questions presented by these appeals relate to the discontinuance and closing of Albany Post Road between the northerly line of the present West 253d street and its junction with Broadway northerly thereof, which we have considered to some extent in sepa-

rate appeals by one Van Cortlandt, individually and as executor, and by the city of New York (159 N. Y. Supp. 478), argued and to be decided herewith. The facts stated, in our opinion on the other appeal will not be restated here. In so far as appellants contend that Broadway, as it theretofore existed bounding on the block in which Albany Post Road was discontinued, was not continued by the map filed on the 2d day of November, 1895, owing to changes in the exterior lines and grades thereof made by said map, their contentions are decided adversely to them on the authority of the opinion to be handed down in the other appeals.

The several appellants at the time of presenting their petitions owned different parcels of land bounding on the east on Albany Post Road between the notherly line of the present West 254th street and the southerly line of the present West 256th street. Their claims for compensation for the loss of their easements were filed on different days between the 31st day of December, 1914, and the 1st day of June, 1915, and their applications to the court were made on June 7 and July 12, 1915, and were all heard on the 14th day of July, 1915. The applications were denied on the ground that the public and private easements in Albany Post Road appurtenant to the lands of the petitioners were extinguished on the 2d day of November, 1895, when the map was filed, and that the petitioners were not then the owners of said parcels, and that their respective grantors did not succeed to the right to awards for the extinguishment of the easements.

The appellants contend that, even though Broadway was continued on the map as a public street as it theretofore existed, and was in use, the easements were not extinguished until the opening of Newton avenue westerly of their premises, and upon which some of the parcels abut. This contention is made upon the theory that Newton avenue was *substituted* for that part of Albany Post Road which was discontinued by the filing of the map. It is claimed in behalf of appellants that Albany Post Road *was continued* as a public street by said map from its southerly junction with Broadway a little south of West 242d street northerly to West 253d street, and that from that point northerly Newton avenue was *laid out* on the map substantially parallel with Broadway and about 200 feet westerly therefrom to West 260th street, and that this shows that Newton avenue was intended as a substitutional street. The record does not disclose all of those facts, and the claim is untenable in any event. Only part of the map filed is presented by the record, and it only shows the streets northerly of a point just southerly of West 253d street. It shows Newton avenue laid out from West 253d street northerly to a point beyond West 256th street, and it shows the continuance, through part of the block southerly of West 253d street, of a street on the lines of Newton avenue. It appears by other maps in the record that Albany Post Road was somewhat narrower than Newton avenue, and that at the southerly intersection of West 253d street the lines of Albany Post Road were practically within the lines of Newton avenue. The proceeding in which the petitions were made was to acquire land for the opening of Newton avenue from West 253d street to West 260th street. There is an affidavit in the record to the effect that Albany Post Road between

its two junctions with Broadway "followed generally the lines of Barney avenue and Newton avenue as laid out" on the map so filed in 1895. In so far as this affidavit relates to Newton avenue, the title to which is sought to be acquired in this proceeding, it is manifest that it is erroneous; and the record contains no other evidence with respect to the lines of Newton avenue or Barney avenue southerly of West 253d street.

It thus appears that the contention of appellants that Newton avenue is a substitutional street for Albany Post Road is not borne out by the record. So far as appears, Newton avenue is not a through street to the north, but ends at West 260th street, and its only connection with Broadway is by the streets crossing it at right angles. Westerly of Newton avenue, at the customary distance of 200 feet, the map shows another avenue parallel with Newton avenue. It would thus seem that the purpose of laying out Newton avenue was not to make a substitutional street for that part of Albany Post Road discontinued, but to lay out that part of the city in regular blocks as far as might be. It is, however, stated generally in the petitions that it (Newton avenue) was intended to take the place of that part of Albany Post Road so discontinued, both with respect to travel and traffic generally and with respect to the premises of the petitioners. Moreover, the contention that, where the map provides a substitutional street to take the place of the discontinued street, the easements are not extinguished until the substitutional street is opened, is based on discussions in the opinions of the courts, not on a consideration of the question as to whether a particular street shown on the map was intended as a substitute for a discontinued street, but with respect to the legislative intent concerning the closing of a discontinued street by the opening of a new street bounding on the block, which in some of the opinions has been referred to as a substitutional street. See Johnson v. Cox, 42 Misc. Rep. 301, 86 N. Y. Supp. 601, affirmed 124 App. Div. 924, 108 N. Y. Supp. 1136, affirmed 196 N. Y. 110, 110 N. E. 454; Matter of Walton Avenue, 197 N. Y. 518, 90 N. E. 59; Matter of Spuyten Duyvil Road, 152 App. Div. 114, 136 N. Y. Supp. 662.

[1] Manifestly the question does not and cannot depend upon an inquiry with respect to whether a particular street shown on the map was intended as a substitute for a discontinued street. In Matter of Walton Avenue, 131 App. Div. 696, 116 N. Y. Supp. 471, affirmed 197 N. Y. 518, 90 N. E. 59, the question in its broad aspect was considered, and it was there decided that a street omitted from a map filed pursuant to the statute is legally discontinued and closed at the time the map is filed if an existing street is left open bounding on the block, and if not, then when a new street is actually opened bounding on the block. If we had been of opinion that the time of closing depended on the opening of a *new* substitutional street, we would have so stated in construing the statute in that case, and if the Court of Appeals deemed that to be the construction of the statute it is not likely that our opinion on this point would have been approved and adopted by the Court of Appeals. In the Walton Avenue Case the city contended that the easements are extinguished by the opening or

a new street after the map has been filed, and not by the filing of the map continuing an existing street; and we decided against the city on that point.

[2] The learned counsel for the appellants further contends, in effect, that the easements were not extinguished until Albany Post Road was actually discontinued by the physical obstruction thereof on the 1st day of August, 1914, incident to the improvement of West 254th street across the same at an elevated grade of some five feet, or at the time the respective claims of the petitioners were filed, and that the just compensation to be made to them for the extinguishment of their easements is to be determined as of one of those dates. The argument in support of this contention is interwoven with the argument lastly considered with respect to the opening of Newton avenue as a substitutional street, which, however, was about a month and a half later. It is not disputed that Albany Post Road remained open and was used by the public until it was obstructed by the improvement of West 254th street, as stated; and down to that time the evidence shows that the city continued to keep it in repair, but after that date it was not improved or in any manner cared for by the city. In so contending that the easements were not extinguished until the discontinued road was physically obstructed, or until the petitioners filed their claims, counsel for appellants cites and relies upon Matter of City of N. Y., Grand Boulevard and Concourse, 212 N. Y. 538, 106 N. E. 631; Matter of Walton Ave., 197 N. Y. 518, 90 N. E. 59; Barber v. Woolf, 167 App. Div. 627, 153 N. Y. Supp. 139, affirmed 216 N. Y. 7, 109 N. E. 868; Johnson v. Cox, 196 N. Y. 110, 89 N. E. 454; and Astor v. Thwaites, 170 App. Div. 624, 156 N. Y. Supp. 730.

The prevailing opinion in this court in Matter of Walton Ave., supra, considered the question as to when the easements are extinguished by the mere filing of the map leaving an open public street bounding on the block, and by the filing of the map and the subsequent opening of a street bounding on the block; and the views of this court on those questions were unqualifiedly approved by the Court of Appeals. We there held that where, at the time of the filing of the map an open public street remains bounding on the block, the easements are thereupon extinguished and compensation is to be made therefor as of that date, and that where there remains no open public street bounding on the block at the time of the filing of the map, the easements are extinguished when a public street is actually opened for use bounding on the block, and compensation is to be made as of the date of such actual opening of the public street bounding on the block. It is ingeniously argued by counsel for appellants that in the Matter of Walton Avenue the owners of the easements, by applying in the street opening proceeding to have compensation made therefor, thereby relinquished their easements, and that it was therefore unnecessary for the court to consider or determine whether such easements, but for such application by the owners thereof, would have been or could have been extinguished without the physical closing or obstruction of the discontinued street. In the Matter of Walton Avenue, as here, the owners of the easements applied in a pending street opening proceeding to have compensation

made by the commissioners of estimate, and those applications were made long after the filing of the map leaving an open public street bounding on the block.    Our decision was not made upon the theory that the owners of the easements voluntarily relinquished them by thus coming in to have them condemned, and, if it had been, we would have alluded, at least, to that fact, and would have held that the compensation should have been made as of the date when they filed their claims, or made their applications for the condemnation of their easements, all of which were much later than the date of the filing of the map which is the time as of which we expressly and pointedly decided compensation should be ascertained and determined.    We find nothing in the act of 1895 indicating or tending to show that the physical closing or obstruction of the discontinued street effects an extinguishment of the easements.

While it is conceded by counsel for appellants that the fact that the discontinued street is kept open and in public use after the filing of the map, and the fact that it is subsequently physically closed or obstructed, are not in and of themselves sufficient to determine the question as to when the right to compensation for the easements in the discontinued street accrues, it is contended that these facts have been given weight by this court in determining that question in Matter of Spuyten Duyvil Road, 152 App. Div. 114, 136 N. Y. Supp. 662, affirmed 208 N. Y. 593, 102 N. E. 1113, and Matter of Hoyt, 162 App. Div. 469, 147 N. Y. Supp. 599, affirmed 213 N. Y. 651, 107 N. E. 1079.    In Matter of Spuyten Duyvil Road, supra, it was decided that a street omitted from the map filed was not closed by the mere filing of the map where there was no public street bounding on the block actually open and in public use.    The fact that the discontinued street had never been actually closed, but remained open and in use as a public street maintained and cared for by the city, is mentioned in the opinion, but the decision was not placed on that ground.    In Matter of Hoyt, supra, the petitioner's property did not abut upon the part of the street within the block which was closed, but this court held that notwithstanding that fact her easements in the part of the street closed were taken, and she was entitled to a writ of mandamus directing the corporation counsel to institute proceedings under the act of 1895 to ascertain the compensation which should be paid to her therefor, but the date as of which such compensation should be made was not considered, although the fact that the street closed had been permanently and physically obstructed by the erection of a wall a few feet from her property and in the same block as mentioned in the opinion.    If the contention made in behalf of appellants that their easements continued until Albany Post Road was obstructed by the improvement of West 254th street crossing the same, such obstruction would be in violation of their property rights, and might have given rise to an action for trespass, or to abate the nuisance, or have warranted an injunction; but upon no theory would it effect an extinguishment of their easements.    See Gillender v. City of New York, 127 App. Div. 612, 111 N. Y. Supp. 1051.    Moreover, there is no provision in the act of 1895 to the effect that the *actual closing* or obstruction of the discontinued street

or filing of claims has any bearing on the question as to *when* the easements are extinguished. By the plain provisions of the act, as construed by this court and by the Court of Appeals, *all easements* in the discontinued street are extinguished by the filing of the map, provided that there then remains bounding on the block an open street in use, and, if there be not, then such easements are extinguished when a new street is opened bounding on the block. Matter of Walton Ave., supra; Astor v. Thwaites, 170 App. Div. 624, 156 N. Y. Supp. 730.

[3, 4] Another claim made in behalf of appellants is that their private easements are not and cannot be extinguished until they are actually condemned and compensation made therefor. That claim is based upon expressions in the opinion of the Court of Appeals in Barber v. Woolf, 216 N. Y. 7, 109 N. E. 868. We fully considered that question in Matter of Walton Ave., supra, and more recently, and since the decision in Barber v. Woolf, supra, in Astor v. Thwaites, supra, wherein we hold, following a long line of authorities, that it is competent for the Legislature to appropriate, or authorize the appropriation of, private property by a municipality or other political division of the state for public purposes before compensation is made therefor, where adequate provision is made for such compensation, as is provided in the act of 1895, which contemplates the appropriation of the easements in the discontinued streets for public purposes in advance of the making of compensation therefor. The Court of Appeals, in approving the majority opinion of this court in Matter of Walton Ave., supra, sanctioned that doctrine and that construction of the act. In Matter of Walton Ave., supra, we said (131 App. Div. at pages 711, 712, 116 N. Y. Supp. at page 483):

"Ordinarily, where lands or easements therein are acquired for public purposes, the private title or easements are not extinguished until just compensation therefor has been made, but where the right of eminent domain is exercised by the state, or a political division of the state, the Legislature at times provides for the extinguishment of the title and easements at a fixed time in advance of the making of just compensation, and gives the owner, as a substitute for his land or easements, an adequate remedy for damages. Chapter 1006 of the Laws of 1895 contemplates the extinguishment of both public and private easements in discontinued streets in advance of the making of just compensation, and upon the legal discontinuance of the street, the Legislature has, by section 4 of the statute, made it the duty of the corporation counsel to forthwith institute condemnation proceedings for determining the just compensation to be made for the interests acquired; and by section 14 of the act, under which those claimants are in court, either the corporation counsel or the property owners could ask in a proceeding of this nature to have the just compensation that should be made for the closing of the street determined by the commissioners appointed to open the contiguous street, which Walton avenue concededly is."

This is also an answer to the contention made in behalf of the city, more fully on its appeal in the other case, that the easements in question have not yet been condemned, and that the city has not taken any proceedings to condemn them, and that for that reason they have not been extinguished, and the city cannot be compelled to make compensation therefor until it sees fit to condemn them. If that contention of the city were tenable, it would sustain the orders from which the ap-

peals are taken by the petitioners in this proceeding, and we deemed it more logical to meet it in this opinion, and therefore refrain from considering it on the other appeals.

[5] The legislative intent shown by the act, as construed by the decisions cited, was that, when the easements are extinguished, the city might be compelled to institute proceedings for their condemnation pursuant to the provisions of section 4 of the act, or that the city or the owner of the easements might apply in a pending proceeding for opening a contiguous street, to have the commissioners of estimate in such street opening proceeding award compensation for their easements. Matter of Hoyt, supra; Matter of Walton Ave., supra.

It is further contended in behalf of the appellants that the city, by leaving Albany Post Road open and by improving it until it was cut off by the obstruction caused by the construction of West 254th street across it, misled the petitioners into purchasing parcels of land bounding on Albany Post Road on the theory that it was an open public street, and that the city should therefore be deemed estopped from claiming in this proceeding that the easements had been theretofore extinguished, and further that by such obstruction of Albany Post Road incident to the improvement of West 254th street, as contemplated by the plan of improvement shown by the map filed, and by thereafter taxing the roadbed of Albany Post Road as private property, the city should be deemed estopped from contending that the easements were not extinguished by such obstruction and imposition of taxes. It is unnecessary to consider the claim that the city should be deemed estopped from contending that the easements continued *after* such obstruction, for the reason that we are of opinion that they were extinguished prior thereto.

[6] In Matter of Walton Avenue, supra, we considered this point in so far as it is predicated on the fact that the discontinued street was not *actually closed* and *was suffered and permitted* by the city *to be used*. We therein said (131 App. Div. at pages 712, 713, 116 N. Y. Supp. at page 483):

"If, as I think, the right to compensation accrued to the owners the moment the avenues and street became legally closed, then it is quite clear that the just compensation to which they are entitled has to be made as of that time. Their damages consisted in the depreciation of the value of their lands by the legal closing of the avenues and street and the termination of every right they had to have them maintained as public avenues or streets, or to use the same for ingress or egress to their respective parcels. Whether the owners of the fee of the discontinued avenues and street did or did not inclose the same, as authorized by the statute, or prevent the use of the same for ingress or egress to the parcels of the respective claimants, therefore, is quite immaterial. The avenues and street being legally closed, the right to actually close them existed, and any further user, if there was further user, which I think does not appear, was by sufferance, and not as matter of right. The statute being constitutional, and the avenues and street having been legally closed, which terminated the rights of the property owners therein, the Legislature has substituted for those rights a claim for just compensation, to be asserted under a statute. This was a personal claim which accrued to the owner of the property at the time of the legal closing of the avenues and street and the cutting off of his rights therein by the filing of the map. The just compensation to which each owner is entitled is the depreciation in value of his parcel of land by the legal closing of the avenue or street, and the right

thereto accrued at once, without regard to the question as to whether the streets were thereupon *actually closed,* as they might have been, *or whether the property owners were permitted to continue to use them,* and regardless of whether or not the owner continued to hold the title to the parcel which was damaged by the closing of the avenue or street, or whether or not he thereafter parted with title voluntarily or title was taken from him in invitum, for those considerations could not affect the quantum of damages or the right thereto, which does not run with the land. King v. Mayor, etc., of N. Y., 102 N. Y. 172, 6 N. E. 395; Matter of Grade Crossing Commissioners, 64 App. Div. 71, 71 N. Y. Supp. 674, affirmed 169 N. Y. 605, 62 N. E. 1096; Johnson v. Pettit, 120 App. Div. 774, 105 N. Y. Supp. 730; Matter of City of New York (Newtown Creek Bridge), 128 App. Div. 150, 128 N. Y. Supp. 512; Matter of Mayor (Trinity Avenue), 116 App. Div. 252, 101 N. Y. Supp. 613; Harris v. Kingston Realty Co., 116 App. Div. 704, 101 N. Y. Supp. 1104; Matter of Seventh Ave., 59 App. Div. 175, 69 N. Y. Supp. 63. See, also, Wehrenberg v. Seiferd, 125 App. Div. 527, 109 N. Y. Supp. 896."

The contention, however, that there was an estoppel as against the city down to the time of such obstruction of Albany Post Road is not without force on these facts, particularly inasmuch as, if such contention be not sustained, the appellants are not entitled to the compensation for the easements which were extinguished at the time the map was filed and prior to the time they acquired title, and in view of the fact that there is evidence indicating that some of the appellants, at least, purchased in the belief that Albany Post Road was still in existence as a public street. The grantors of the petitioners, however, did not own the fee to Albany Post Road, and the fee thereto is claimed by the state, which filed an answer herein. It appears by the petitions that Albany Post Road, for almost 200 years prior to the filing of the map on November 2, 1895, was a legally established highway, open and in public use and maintained by the public authorities, having been established pursuant to an Act of the Governor, Council and General Assembly of the colony of New York, passed June 19, 1703, and extending from Kingsbridge to Albany; that by chapter 25 of the Laws of 1779 one Frederick Phillipse, among others, was convicted and attainted of treason, and all his property within this state declared forfeited to and vested in the people of the state; that said Phillipse at that time was seised of a large tract of land, including the lands now owned by the petitioners and the bed of the part of Albany Post Road closed, having acquired title thereto through a royal grant dated June 12, 1693; that said tract was sold in the year 1799 by commissioners of forfeiture, pursuant to chapter 64, § 45, of the Laws of 1784, which provided, among other things, that it should not be lawful for said commissioners "to sell or dismiss" Albany Post Road, so far as the same is laid over lands belonging to the people of the state, which to that extent was declared by the act to be a "public highway," and it was therein provided that it should forever thereafter "be reserved and kept open as a public highway"; that the locus in quo became part of the city of New York by the Consolidation Act (chapter 410 of the Laws of 1882), and at the time of the filing of the map herein all of the lands owned by the petitioners were "owned in fee by Mary Samler, widow of William Samler, who had acquired title thereto by deed from James and Rebecca Post, dated March 28,

1835," in which they were described as bounded easterly by Albany Post Road, and that the premises "continued in the ownership and possession of said William or of said Mary Samler, or of their heirs, until" conveyed by "said heirs" to James A. Hennessy, who took title for the Stuard Realty Company, on September 10, 1909; that William Samler died in the year 1849, and Mary Samler died in the year 1904, both intestate, and "their heirs" conveyed the premises to Hennessy, as stated, by full covenant warranty deed, in which they were described as bounded easterly by Albany Post Road; that the premises were shown subdivided into numbered lots on a map entitled "Map of Samler Estate, Property at West 256th Street and Broadway, Borough of the Bronx, New York City, N. Y.," made by John F. Fairchild, civil engineer, dated August 30, 1909, and filed in the office of the register of the county of New York, which showed Albany Post Road with side and curb lines and roadbed, with the lots now owned by the petitioners fronting thereon; that the lots so shown on said map were sold by the Stuard Realty Company at public auction on or about October 5, 1909, while the legal title still remained in Hennessy, and in the terms of sale it was stated that some of said lots, including those now owned by the petitioners, fronted on Albany Post Road; that on October 19, 1909, Hennessy and wife conveyed the premises, with the possible exception of the parcel now owned by appellant Schloss, who in his petition claims under a deed from Hennessy and wife to the Stuard Realty Company by full covenant warranty deed, in which the premises were described as bounded easterly on Albany Post Road; and that on November 3, 1909, deeds were given by the Stuard Realty Company to the purchasers at the auction sale, in which the lots conveyed were described by their numbers appearing on said map of the Samler estate, and by which they were conveyed, "together with appurtenances and all the estate and rights" of the grantor "in and to said premises," and the deed from Hennessy and wife to Schloss was dated on the same day and was the same in form.

It thus appears by the petitions that the parcels to which the easements in Albany Post Road were appurtenant were, at the time of the extinguishment of those easements by the filing of the map on November 2, 1895, owned in fee by Mary Samler, and although it is also stated in the petitions that the ownership and possession thereof continued in her deceased husband, or in her, or in their heirs, until conveyed by the heirs to Hennessy, these allegations cannot be deemed as modifying the preceding unequivocal allegation that the title was in her, for no facts are shown passing the title from her until her death, by which title passed to her heirs, she having died intestate, and it is conceded in the points for the appellants that the title was in her at the time of the filing of the map. At the time, therefore, of the extinguishment of her easements, there became substituted therefor a personal claim in her favor for compensation. Matter of Walton Ave., supra, 131 App. Div. at pages 712, 713, 116 N. Y. Supp. at page 471; King v. Mayor, etc., of N. Y., 102 N. Y. 172, 6 N. E. 395. If, as we hold, the easements were extinguished by the

filing of the map, the only theory on which the appellants claim to be entitled to awards therefor is that Hennessy became entitled thereto by virtue of the conveyance to him by the heirs of Mary Samler, and that they have succeeded to his rights, either as grantees from him or from the Stuard Realty Company, for which he took title, or as grantees or mortgagees from its grantees. The argument in support of their claims is predicated upon the fact that the heirs of Mary Samler, who conveyed to Hennessy, are identical with her next of kin, who after the payment of her debts would be entitled to any surplus of the awards, the right to which became vested in her personal representatives on her death in 1904; but there is no evidence to support that contention, and the evidence is wholly insufficient to sustain the right of the petitioners to recover the awards on that theory, even if the next of kin, by joining in the conveyance as heirs, could be deemed to have assigned to Hennessy any rights they had to compensation for the extinguishment of the easements.

[7] It is well established that the claims for compensation which became substituted for the extinguished easements would not pass by the conveyance, even though such claims were owned by the grantors, without an express assignment thereof, which there was not in the case at bar. King v. Mayor, etc., of N. Y., supra; Matter of Mayor (Trinity Avenue), 116 App. Div. 252, 101 N. Y. Supp. 613; Harris v. Kingston Realty Co., 116 App. Div. 704, 101 N. Y. Supp. 1104; Matter of Mayor, etc., of N. Y. (Grote Street), 139 App. Div. 69, 123 N. Y. Supp. 619, appeal dismissed 199 N. Y. 549, 93 N. E. 1122; Matter of Hamilton Street, 144 App. Div. 702, 129 N. Y. Supp. 317; Simms v. City of Brooklyn, 87 Hun, 35, 33 N. Y. Supp. 859, affirmed 147 N. Y. 703, 42 N. E. 722. In King v. Mayor, etc., of N. Y., supra, the facts were quite similar to those in the case at bar, even if it be assumed here that Hennessy's grantors were entitled to compensation for the easements, which is the most favorable view to appellants that could be taken. There Bloomingdale Road was discontinued, and the easements extinguished by the filing of a map on March 8, 1868, and thereafter and on April 25, 1871, the owners at the time the easements were extinguished conveyed the premises, bounding them on Bloomingdale Road, and expressly conveyed "all the right, title, and interest of the grantors, if any, in and to so much of the land of said Bloomingdale Road as is adjacent to the land and premises conveyed," and the deed contained the usual covenant of warranty, and conveyed the premises described with the "hereditaments and appurtenances." Thereafter, and in December, 1880, an award for the extinguishment of the easements in Bloomingdale Road appurtenant to the premises conveyed was made. The case arose on a submission of a controversy between parties who had succeeded to the rights of the owners at the time the easements were extinguished and parties who had succeeded to the rights of the owner at the time the award was made. The court held that the extinguishment of the easements gave rise to a personal claim on the part of the owners for compensation, and that this did not pass to their grantees, notwithstanding the express con-

veyance of appurtenances and the warranty. It was held that the warranty was limited to the title conveyed, and that although the conveyance would transfer to the grantee easements in the road, if any were then owned by the grantors, it could not be deemed, on the ground of estoppel or otherwise, to transfer the right to the award. It does not appear from the opinion whether the discontinued road had been actually closed or obstructed at the time of the conveyance which was subsequent to the extinguishment of the easements; but the court expressly held that it was in fact closed by the filing of the map, and that the purchaser knew or was bound to know that the public highway no longer existed.

Appellants rely principally upon Magee v. City of Brooklyn, 144 N. Y. 265, 39 N. E. 87, which is clearly distinguishable, upon the ground that thereafter title to part of a parcel of land bounding on a public street had vested in the city for the purpose of widening the street, but long before the appropriation thereof by the city, or the making of an award therefor, the grantor conveyed the entire parcel with full covenants of warranty, and "all the estate, right, title, interest, property, possession, claim, and demand whatsoever, as well in law as in equity, of the said party of the first part of, in, and to the same, and every part and parcel thereof," and it was held that the grantee was entitled to the award on the theory that that must have been the intention of the parties, inasmuch as the grantor would otherwise be liable to the grantee for breach of covenant.

[8] It was incumbent upon the petitioners to show that they were entitled to the awards (Matter of Richard Street, 138 App. Div. 821, 123 N. Y. Supp. 438; Matter of Mayor, etc, of N. Y. (Grote Street), supra, and, having failed so to do, their applications were properly denied.

It follows that the orders should be affirmed, with $10 costs and disbursements. Orders filed.

CLARKE, P. J., and DOWLING and DAVIS, JJ., concur.

PAGE, J. (dissenting). For the reason given in this same matter, in Re Van Cortlandt, the order in this case should be reversed, and the motion granted. The easements, for the taking of which compensation was sought in this proceeding, were not taken by the city until August 1, 1914, at which time the petitioners were vested with the title. These easements arise out of the contiguity of the property to the public street, and not out of any grant by the former owner. When the former owner conveyed the property, it abutted upon a street that was opened to the public use. As an incident of its location, easements of light, air, and access were appurtenant to it. These easements were not of such a character that they can be retained by a grantor. They are indissolubly united to the right of possession, and therefore the owner, at the time the right of access to the public street was obstructed, is entitled to be compensated.