In the Matter of the Application of the CORPORATION COUNSEL, Pursuant to Chapter 1006 of the Laws of 1895, for the Ascertainment and Determination of the Compensation Which Should Justly Be Made to GERTRUDE L. HOYT and Others for the Discontinuance and Closing of Attorney Street, from a Point About 61 Feet Southerly from the Center Line of Delancey Street Bridge to a Point 122 Feet Northerly Therefrom, in the Borough of Manhattan, City of New York.

GERTRUDE L. HOYT and Others, Appellants; LAMAR HARDY, as Corporation Counsel of the City of New York, Respondent.

First Department, March 7, 1919.

**Municipal corporations — city of New York — closing of street — claims of abutting owners for damages accrue upon filing of map — right to damages sustained for actual closing prior to filing of map — offset of subsequent benefits — reversal of order overruling objections to report of commissioners — submission to new commissioners.**

Where prior to the filing of a map closing a portion of a street in the city of New York said portion of the street had been completely closed to public travel by the city, it was error for the commissioners of estimate and assessment to assume that abutting owners were not entitled to any award for such closing as had taken place prior to the filing of the map.

Since claims for damages became at once vested in the owners of the abutting premises at the time of the filing of the map which extinguished their easements therein, they were entitled to be awarded damages as of said date and it was error to offset benefits which had accrued from outlets subsequently afforded them.

Because of the errors of the commissioners in assessing damages, an order overruling objections to their report should be reversed and the matter referred to new commissioners.

MERRELL, J., dissented.

SEPARATE APPEALS by Gertrude L. Hoyt and others, and by Louis Perlstein and another, and by Kamnitz Podolsky and others, c aimants to one or more of damage parcels Nos. 1 to 7, inclusive, herein, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of May, 1916, overruling their objections to the report of the commissioners of estimate and assessment herein and confirming the report.

*Truman H. Baldwin*, for the appellants Hoyt and others.

*Raphael Tobias*, for the appellants Perlstein and others, and Podolsky and others.

*Joel J. Squier*, for the respondent.

LAUGHLIN, J.:

The city of New York, for the purpose of constructing, using and maintaining the Williamsburg bridge over the East river, acquired title by condemnation proceedings to a strip of land in the borough of Manhattan 150 feet in width along the southerly side of Delancey street from Clinton street easterly to the East river, excepting that part thereof which had been acquired theretofore for public street purposes. Attorney street had been opened and was in use as a public street for upwards of 100 years and ran northerly and southerly next easterly of Clinton street. The approach to the bridge was to pass over Attorney street, and in constructing the bridge and effecting changes of grades of other streets incident thereto it became necessary to close 122 feet of that street extending southerly from the northerly line of the 150-foot strip. On the 9th day of March, 1906, the board of estimate and apportionment duly adopted a resolution closing that part of Attorney street. That resolution was duly approved by the mayor on the nineteenth of the same month, and a map showing the closing was duly filed on the 16th of July, 1908. The 122 feet of Attorney street had been completely closed to public travel, however, by the erection of a fence across the southerly end thereof on the 26th of June, 1907, and it thereafter remained closed and subsequently a permanent retaining wall was constructed across it at that point. After erecting

the retaining wall, the city laid a sewer from Attorney street easterly to Ridge street, which was the next street and was not cut off by the bridge, and a water main from Attorney street westerly along the southerly 28 feet of the premises thus acquired for bridge purposes, and constructed a sidewalk from Attorney street both easterly and westerly over said 28-foot strip at the southerly side, and placed curbing and asphalted the remaining part thereof for vehicle traffic.   These improvements were not completed until the latter part of November, 1908, and until that time the 28 feet of Attorney street next southerly of the closed part of the street and lying between parcels so acquired for bridge purposes, and the outlet therefrom to the east and west over the premises so acquired for bridge purposes, had been completely obstructed; but since that time there has been this outlet to the east to Ridge street, and to the west to Clinton street, from the northerly end of Attorney street as so closed.   The damaged parcels in question all lie southerly of the part of Attorney street so closed and abut on Attorney street in the block in which it was closed.

The city failed to institute proceedings to have the damages to the easements of the appellants by the closing determined pursuant to the provisions of chapter 1006 of the Laws of 1895 until it was compelled so to do by mandamus in a proceeding instituted by the appellant Hoyt. (*Matter of Hoyt* [*Closing Attorney Street*], 162 App. Div. 469; affd., 213 N. Y. 651.) The facts with respect to the closing of Attorney street and the opening of these outlets in the same block accessible to the appellant Hoyt were presented in opposition to her motion for a writ of mandamus, and it was held that she had easements in that part of Attorney street which was closed, for the reason that she was entitled to access to and from her premises both ways, at least in the block in which her premises were, and that the city had acquired the premises for the bridge in fee simple absolute and, therefore, her use of the outlets over part of these premises was by sufferance only. It was, therefore, held that she was entitled to *some* award for damages, and no opinion was expressed with respect to the amount of the damages.   Thereafter and on the 31st day of March, 1915, on the petition of the city, the order

appointing the commissioners was made.   In the meantime, with a view to minimizing the awards to claimants for damages to their easements by the closing, the city attempted to have the twenty-eight-foot strip appropr ated for street use without having it condemned for public street purposes.   On the 19th of March, 1915, the board of estimate and apportionment, purporting to act pursuant to the provisions of section 442 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1913, chap. 329),* adopted a resolution with a view to changing the map or plan of the city by establishing the lines and grade of an unnamed street according to a map or plan signed by the acting secretary of the board and dated February 6, 1915, which embraced these outlets and designated them " south clearance roadway," and gave notice of a public hearing thereon for April 16, 1915, which resolution was thereafter approved by the mayor.   After affording interested parties an opportunity to be heard, pursuant to said resolution, the board on April 16, 1915, adopted a resolution changing the map or plan of the city accordingly.   On the fifth of May thereafter, the commissioner of bridges wrote the commissioners of the s nking fund stating that at the request of the corporation counsel he had submitted said plan to the board of estimate and apportionment, that the lands had been acquired for the bridge but were no longer required for bridge purposes and, as they had been laid out as a street, he requested that the sinking fund commissioners, pursuant to section 205 of the charter (as amd. by Laws of 1913, chap. 259), which authorizes said commissioners " to assign to use for any public purposes any city property, for whatsoever purpose originally acquired, which may be found by the department having control thereof to be no longer required for such purpose," assign them to the president of the borough of Manhattan for street purposes. On the 19th day of May, 1915, the commissioners of the sinking fund adopted a resolution pursuant to said section, assigning these lands " to the President of the Borough of Manhattan."   The president of the borough of Manhattan had authority, under section 383 of the charter (as amd. by

---

* Since amd. by Laws of 1917, chap. 632.— [Rep.

Laws of 1907, chap. 383), to improve and maintain in repair all public streets within the borough. It does not appear that any action was taken by him in the premises other than by permitting the premises to continue to be used as they then were used by the public.

These facts were all shown before the commissioners, over objection and exception duly taken by the appellants; and other facts were presented tending to show recognition of the street as thus laid out by some of the appellants and by the building department of the city.

It appears by a formal ruling of the commissioners that they made the awards on the theory that the city was liable only for the damages to the easements of the claimants caused by such closing of the street as occurred after the filing of the map, and that they assumed that the claimants were not entitled to any award for such closing as had taken place before that time. That, manifestly, was error. To the extent that there was a closing before the filing of the map, it was a trespass, and the commissioners should have made their awards on the theory that there was no closing until the map was filed. Counsel for the city contended before the commissioners that they should offset against the damages to the easements of the appellants which had accrued on the filing of the map (*Matter of Mayor, etc.* [*Walton Ave.*], 131 App. Div. 712; affd., 197 N. Y. 518; *Matter of Newton Ave.* [*Harris*], 173 App. Div. 23; *Matter of Newton Ave.* [*Van Cortlandt*], Id. 32; affd., 219 N. Y. 399; *Matter of City of New York* [*West 151st St.*], 149 App. Div. 64) the benefits that accrued to the parcels of the claimants from these outlets subsequently afforded them, and the awards were made on that theory. It is not entirely clear that the " south clearance roadway," by the proceedings to which reference has been made, has become a public street, for the city has received no compensation therefor (*Matter of Mayor, etc.*, 186 N. Y. 237; N. Y. Const. art. 8, § 10); but in the view I take of the case, it is not necessary to decide whether, by virtue of these statutory provisions and the action taken thereunder, or on the theory of estoppel or otherwise, said twenty-eight-foot strip has become dedicated in perpetuity for public street purposes, for I am of opinion that the claim-

ants were entitled to be awarded the damages to their easements as of the date when they were extinguished by the filing of the map. (*Matter of Walton Ave., supra; Matter of Newton Ave.* [*Harris*], *supra; Matter of City of New York, supra.*) The commissioners have no equity powers. It is authoritatively settled by the decision cited that the claims for damages became at once vested in the owners of the premises at the time of the filing of the map which extinguished the easements, and that they could then sell and convey, and that the right to the awards would not pass to the grantees, excepting under extraordinary circumstances giving rise to an estoppel as between grantor and grantee with respect thereto. The fact that these owners did not convey before the alleged benefits upon which the right to offset is claimed accrued to the premises, cannot affect their rights, which had become fixed and vested before. Such a ruling would penalize them for retaining title. We have examined the evidence offered with respect to the damages and believe that the appellants have grossly exaggerated their claims, but since the awards were made on erroneous principles they cannot be permitted to stand.

The order must, therefore, be reversed, with ten dollars costs and disbursements to appellants, and, in accordance with the practice in such cases (*Matter of Collis*, 144 App. Div. 382), the matter must be referred to new commissioners to be designated in the order.

CLARKE, P. J., PAGE and SHEARN, JJ., concurred; MERRELL, J., dissented.

Order reversed, with ten dollars costs and disbursements to appellants, the matter to be referred to new commissioners to be designated in the order. Order to be settled on notice.